THE STATE OF OHIO, APPELLANT, *v*. WILLIAMS, APPELLEE.

[Cite as *State v. Williams*, 126 Ohio St.3d 65, 2010-Ohio-2453.]

*An involuntary commitment under R.C. 2945.39 does not violate principles of equal protection or due process — Because R.C. 2945.39 is civil in nature, a person committed under the statute need not be afforded the constitutional rights afforded to a defendant in a criminal prosecution.*

(No. 2008-2424 — Submitted October 20, 2009 — Decided June 8, 2010.)

APPEAL from the Court of Appeals for Montgomery County,

No. 22532, 179 Ohio App.3d 584, 2008-Ohio-6245.

_____

SYLLABUS OF THE COURT

1. An involuntary commitment under R.C. 2945.39 does not violate principles of equal protection or due process.

2. Because R.C. 2945.39 is civil in nature, a person committed under the statute need not be afforded the constitutional rights afforded to a defendant in a criminal prosecution.

_____

CUPP, J.

{¶ 1} In this appeal we consider the constitutionality of R.C. 2945.39. This statute, along with its related statutes, authorizes a common pleas court to exercise continuing jurisdiction over a criminal defendant who has been charged with a violent first- or second-degree felony and who has been found incompetent to stand trial and remains so after the expiration of R.C. 2945.38's one-year time frame for restoring competency. R.C. 2945.39 authorizes the common pleas court to order the involuntary commitment of such a person in a mental-health facility when the statutory criteria are met. For the reasons that follow, we determine that

R.C. 2945.39 is a civil statute and that its provisions and those of related statutes do not violate principles of due process or equal protection. We therefore reverse the judgment of the court of appeals, which held to the contrary.

## I. Facts and Procedural History

{¶ 2} Defendant-appellee, Thonex Williams, was indicted for rape (a first-degree felony) and other offenses in December 2005. Williams entered a plea of not guilty by reason of insanity and underwent a mental-health evaluation. A judge of the Montgomery County Court of Common Pleas determined, consistent with the report of the mental-health examiner, that Williams was incompetent to stand trial and that there was a substantial probability that he could be restored to competency within the one-year time period prescribed by R.C. 2945.38. The trial court committed Williams to Twin Valley Behavioral Healthcare for restorative treatment.

{¶ 3} The trial court's review of Williams's mental status six months later resulted in a determination that Williams remained incompetent to stand trial, and the court ordered continuing treatment. As the maximum time under R.C. 2945.38 for restoration approached, a mental-health-examination report indicated that Williams remained incompetent to stand trial and opined that he could not be restored to competency within the statute of limitations for his most serious charge, rape.

{¶ 4} The state then orally moved at a hearing for the trial court to retain jurisdiction under R.C. 2945.39(A)(2). Williams moved to dismiss the indictment, arguing that the trial court's exercise of continuing jurisdiction pursuant to R.C. 2945.39 would deprive him of his rights to due process and equal protection. After the state responded by defending the constitutionality of the court's retaining jurisdiction, and after an oral hearing, the trial court denied the motion to dismiss and held that R.C. 2945.39 is constitutional.

**{¶ 5}** On November 30, 2007, the trial court held a hearing under R.C. 2945.39(A)(2) to decide whether to retain jurisdiction. The trial court found by clear and convincing evidence that (1) Williams committed the offense of rape with which he was charged, (2) he was a mentally ill person subject to hospitalization by court order, (3) he was not competent to stand trial, and (4) the statutory time limit for restoration treatment had expired. The court rejected Williams's arguments that the matter belonged in probate court for a commitment under R.C. Chapter 5122. The trial court retained jurisdiction subject to R.C. 2945.401 and 2945.402 and ordered Williams to remain hospitalized at Twin Valley.

**{¶ 6}** Upon Williams's appeal, the Second District Court of Appeals reversed in a divided decision. The majority held that R.C. 2945.39 is unconstitutional on three grounds. First, the majority held that an involuntary commitment under that statute is "criminal, not civil in nature" and that Williams's constitutional rights were therefore violated because he had not received all the procedural safeguards in his R.C. 2945.39 commitment hearing that he should have received as a criminal defendant undergoing prosecution. 179 Ohio App.3d 584, 2008-Ohio-6245, 902 N.E.2d 1042, ¶ 49.

**{¶ 7}** Second, the appellate majority held that R.C. 2945.39 violated Williams's right to equal protection because that statute's procedures for committing persons *under indictment* for a serious felony offense do not also apply to persons who have been *convicted* of the same offense and because the procedures for terminating commitment are more onerous for a person committed under R.C. 2945.39 than for a person committed under R.C. Chapter 5122. Id. at ¶ 66-67.

**{¶ 8}** Third, the appellate majority agreed with Williams's arguments that R.C. 2945.39 violated his right to due process because the common pleas court's retention of jurisdiction pursuant to the criminal indictment and the

permitted length of the commitment—the maximum term that he could have received for the most serious offense in the indictment—are not reasonably related to the purpose of commitment, which is to protect society from dangerous persons who are mentally ill. Id. at ¶ 79-82.

{¶ 9} The dissenter disagreed with the majority's conclusions on each of the constitutional grounds considered and would have affirmed the trial court's commitment order. Id. at ¶ 85-92 (Wolff, P.J., dissenting).

{¶ 10} We accepted the state's appeal under our discretionary jurisdiction to review three propositions of law regarding whether an involuntary commitment under R.C. 2945.39 is civil or criminal in nature, whether such a commitment violates a defendant's equal-protection rights, and whether such a commitment violates a defendant's due-process rights. 121 Ohio St.3d 1438, 2009-Ohio-1638, 903 N.E.2d 1222.

## II. The Relevant Statutes

{¶ 11} A summary of the several statutes applicable to cases in which a defendant charged with a serious offense of violence (here rape, a first-degree felony) is mentally ill is useful to an understanding of this matter. Under R.C. 2945.38(B)(1) and (C)(1), a common pleas court presiding over a criminal case involving a defendant charged with a violent first- or second-degree felony who has been found incompetent to stand trial pursuant to R.C. 2945.37 may require the defendant to undergo treatment for up to one year. One situation in which the court is authorized to order treatment is when it finds that there is a "substantial probability" that the incompetent defendant will become competent to stand trial within one year while undergoing treatment. R.C. 2945.38(B)(1)(a).

{¶ 12} If the one-year time for treatment expires and the defendant remains incompetent to stand trial, R.C. 2945.38(H)(3) directs that further proceedings must occur under R.C. 2945.39, 2945.401, and 2945.402. R.C. 2945.39(A) provides two options that can be pursued at that point for a defendant

4

who is mentally ill. First, the court or prosecuting attorney may seek the defendant's civil commitment in probate court under R.C. Chapter 5122. R.C. 2945.39(A)(1). Second, the court or prosecuting attorney may seek to have the common pleas court retain jurisdiction over the defendant. R.C. 2945.39(A)(2).

{¶ 13} To retain jurisdiction, the trial court must find, by clear and convincing evidence after a hearing, both that the defendant committed the charged offense and that the defendant is a mentally ill person subject to hospitalization by court order. R.C. 2945.39(A)(2)(a) and (b). "Mentally ill person subject to hospitalization by court order" has the same meaning as that set forth in R.C. 5122.01(B), and includes persons who, because of mental illness, represent a substantial risk of physical harm to others as manifested by evidence of recent violent behavior or present dangerousness. R.C. 2945.37(A)(7) and 5122.01(B)(2). See *In re Burton* (1984), 11 Ohio St.3d 147, 11 OBR 465, 464 N.E.2d 530, paragraph one of the syllabus (a totality-of-the-circumstances test governs whether a person who is alleged to be mentally ill should be hospitalized under R.C. 5122.01(B)).

{¶ 14} If the court does not make both R.C. 2945.39(A)(2) findings, it must dismiss the indictment and discharge the defendant unless the court or the prosecuting attorney files for the defendant's civil commitment in probate court under R.C. Chapter 5122. R.C. 2945.39(C). But "[a] dismissal of charges under [R.C. 2945.39(C)] is not a bar to further criminal proceedings based on the same conduct." Id.

{¶ 15} If the court does make both R.C. 2945.39(A)(2) findings, then R.C. 2945.39(D)(1) directs the court to commit the defendant to a hospital operated by the Department of Mental Health or to another appropriate facility. The court must order that the defendant be placed in the least-restrictive commitment alternative available consistent with public safety and the defendant's welfare, " giv[ing] preference to protecting public safety." Id.

{¶ 16} Once a court commits a defendant under R.C. 2945.39(D)(1), all further proceedings are governed by R.C. 2945.401 (which include proceedings regarding the defendant's possible placement in nonsecured status; the termination of the commitment; periodic clinical reports and clinical recommendations on the defendant's competence, degree of confinement, and termination of commitment; and trial court hearing requirements) and 2945.402 (regarding the defendant's possible conditional release). R.C. 2945.39(D)(3).

{¶ 17} Under R.C. 2945.401(J)(1)(a) through (c), a commitment pursuant to R.C. 2945.39 terminates upon the earlier of (a) the trial court's determination that the defendant is no longer a mentally ill person subject to hospitalization by court order, (b) the expiration of the maximum prison term the defendant could have received if the defendant had been convicted of the most serious offense charged,[1] or (c) the trial court's termination of the commitment under R.C. 2945.401(J)(2)(a)(ii), which requires findings that the defendant is competent to stand trial and is no longer a mentally ill person subject to hospitalization by court order.

{¶ 18} If the trial court's jurisdiction is terminated pursuant to R.C. 2945.401(J)(1)(b) because the defendant's commitment ends upon the expiration of the maximum prison term the defendant could have received, the court or prosecuting attorney may seek the defendant's civil commitment in probate court under R.C. Chapter 5122. R.C. 2945.401(A).

### III. Analysis

{¶ 19} Each of Williams's assignments of error in the court of appeals challenged the facial constitutionality of R.C. 2945.39. Williams did not challenge the way the trial court applied R.C. 2945.39 and related statutes to his situation. The resolution of this case, therefore, turns on the evaluation of R.C.

---

1. The parties agree that the applicable maximum term in this case is ten years.

2945.39's facial constitutionality on each of the three grounds considered by the appellate court.

{¶ 20} All statutes enjoy a strong presumption of constitutionality. *State v. Cook* (1998), 83 Ohio St.3d 404, 409, 700 N.E.2d 570, citing *State ex rel. Dickman v. Defenbacher* (1955), 164 Ohio St. 142, 57 O.O. 134, 128 N.E.2d 59, paragraph one of the syllabus. To overcome the presumption, one must prove beyond a reasonable doubt that the statute is unconstitutional. *State v. Bloomer*, 122 Ohio St.3d 200, 2009-Ohio-2462, 909 N.E.2d 1254, ¶ 41; *State v. Ferguson*, 120 Ohio St.3d 7, 2008-Ohio-4824, 896 N.E.2d 110, ¶ 12. "In order for a statute to be facially unconstitutional, it must be unconstitutional in all applications." *Oliver v. Cleveland Indians Baseball Co. Ltd. Partnership*, 123 Ohio St.3d 278, 2009-Ohio-5030, 915 N.E.2d 1205, ¶ 13.

### A. Is R.C. 2945.39 Criminal in Nature?

{¶ 21} The appellate court held that an involuntary commitment under R.C. 2945.39 is criminal rather than civil in nature and that Williams's constitutional rights were therefore violated because in his R.C. 2945.39 commitment hearing, he was not afforded the procedural safeguards required by the Constitution for criminal prosecutions. In so holding, it applied the "intent-effects test" employed by this court in *State v. Cook*, 83 Ohio St.3d at 415, 700 N.E.2d 570, to consider whether sex-offender legislation enacted in 1996 was civil or criminal for purposes of conducting an analysis under the Ex Post Facto Clause, Section 10, Article I of the United States Constitution.

{¶ 22} In applying the intent-effects test, a court first considers whether the legislature intended the statute to be remedial (and therefore civil) or penal (and therefore criminal). Id. If the intent was that the statute be penal and criminal, then the inquiry ends. However, if the intent was that the statute be remedial and civil, then the statute's specific effects must be examined. The statute may still be determined to be punitive and criminal if its effects negate a

remedial intention. Id. at 417-418. See also *United States v. Ward* (1980), 448 U.S. 242, 248-249, 100 S.Ct. 2636, 65 L.Ed.2d 742.

{¶ 23} The intent-effects test was also applied by the United States Supreme Court in *Kansas v. Hendricks* (1997), 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501. In that case, the court evaluated the constitutionality of a Kansas statute permitting the state to institutionalize "sexually violent predators" who had completed their criminal sentences but who had mental abnormalities or personality disorders that indicated that they would likely reoffend. Id. at 350-353. The court held that the statute was civil in nature and did not violate the Double Jeopardy Clause or the Ex Post Facto Clause. Id. at 370, 371.

{¶ 24} The statute in *Hendricks* was determined to be civil for reasons that included the fact that the statutory provision was in the state's probate code and not in its criminal code, id. at 361, the statute did not implicate retribution or deterrence, which are the primary goals of criminal punishment, id. at 361-363, and the statute did not require a finding of scienter, id. at 362. The appellate court in the case at bar distinguished *Hendricks*, pointing out that R.C. 2945.39 and other implicated statutes are in the state's criminal code and that there is no explicit indication of a civil purpose in R.C. 2945.39. 179 Ohio App.3d 584, 2008-Ohio-6245, 902 N.E.2d 1042, at ¶ 43.

{¶ 25} Although the appellate court here recognized that R.C. 2945.39 is meant to protect the public, it read the statute to "suggest" that "protecting the public from dangerous mentally ill persons is secondary to punishing those dangerous mentally ill persons who cannot be tried." Id. at ¶ 45. In support of this view, the court noted that the criminal indictment remains pending after the trial court commits the defendant under R.C. 2945.39. Id. at ¶ 46.

{¶ 26} As to the requirement that the evaluator conducting the periodic reviews under the statutes must express an opinion as to whether the defendant remains incompetent to stand trial, the appellate court considered the requirement

to be an indicator that a key statutory purpose is to "confine" the defendant in case he regains competency to be tried. Id. The court found fault with the way the relevant statutes link the maximum length of detention to the maximum criminal sentence the defendant could have received if convicted. It determined that this connection bears no relation to the purposes of civil commitment and shows that the charged offense is not used solely as evidence of dangerousness or mental illness in determining whether commitment is appropriate. Id. at ¶ 47.

{¶ 27} According to the appellate court, the statutory framework "strongly suggests that commitment procedures under R.C. Chapter 5122 are adequate to address society's interest in confining dangerous mentally ill persons." Id. at ¶ 48. The appellate court stated that "although R.C. 2945.39 attempts to accomplish some of the same goals as civil commitment, the commitment procedures of R.C. 2945.39 reflect an overriding intent to confine incompetent defendants who have been charged with serious felonies as if they had been convicted or until they can be tried." Id. at ¶ 49.

{¶ 28} Because the appellate court found that the intent of R.C. 2945.39 is penal, and that the statute is criminal for that reason, it did not consider the "effects" prong of the intent-effects test.

{¶ 29} In contrast, the dissent agreed with the trial court that R.C. 2945.39 is civil in nature and functions as "merely a transfer of commitment authority to the criminal court from the probate court for mentally ill persons subject to hospitalization by court order, whose present dangerousness is demonstrated by the commission of a serious felony." Id. at ¶ 87 (Wolff, P.J., dissenting).

{¶ 30} Our consideration of R.C. 2945.39 and related statutes leads us away from the view that the commitment of an incompetent defendant under R.C. 2945.39 is the functional equivalent of criminally confining the defendant. Nor do we see any indication of an overriding intent to punish or confine criminal defendants within the statutory framework.

**{¶ 31}** Rather, we view R.C. 2945.39 and related statutes as designed primarily for the purpose of protecting the public. In particular, we note that R.C. 2945.39(D)(1), which requires the trial court to order the least-restrictive commitment alternative available consistent with public safety and the defendant's welfare if it enters a commitment order under R.C. 2945.39, explicitly states that the court "shall give preference to protecting public safety." This statement gives voice to the predominant intent underlying R.C. 2945.39.

**{¶ 32}** The present dangerousness of a specific offender (who, as a threshold matter, must have been charged with a serious offense, R.C. 2945.38(C)(1), to be subject to the statutes at issue) is the critical component of an R.C. 2945.39 proceeding. The type of offense charged is a reasonable indicator of the level of the offender's dangerousness. The seriousness of the charged offense plays a permissible and highly relevant role in the trial court's determination whether the offender's commitment under R.C. 2945.39 is appropriate. See *Hendricks*, 521 U.S. at 362, 117 S.Ct. 2072, 138 L.Ed.2d 501 (a person's prior conduct may permissibly be considered to support a finding of dangerousness).

**{¶ 33}** Moreover, R.C. 2945.39, as with the statute under consideration in *Hendricks*, does not require a finding of scienter, nor does it implicate retribution or deterrence, which are the primary objectives of criminal punishment and the two most telling factors that a particular statute is criminal in nature. See id. at 361-363. R.C. 2945.39 does not implicate retribution, because it does not affix culpability for prior criminal conduct. See id. at 362. A trial court's determination by clear and convincing evidence under R.C. 2945.39(A)(2) that the defendant committed the offense does not require a finding of scienter and is merely a factor considered in determining the propriety of the commitment; it plays no role beyond that limited purpose. R.C. 2945.39 does not implicate deterrence, because a defendant to whom it applies is unlikely, by the very nature

10

of his mental illness, to possess the ability to tailor his behavior to the requirements of the law upon the threat of commitment. See id. at 362-363.

{¶ 34} Although it is true that R.C. 2945.39 and its related statutes are contained within Title 29 of the Revised Code, that fact is not dispositive as to whether these statutes are civil or criminal. The sum of the statutory attributes must be examined. See *Cook*, 83 Ohio St.3d at 417, 700 N.E.2d 570. Similarly, the fact that the statutes refer to the person being considered for commitment as the "defendant" does not mean that proceedings under R.C. 2945.39 are necessarily criminal in nature. We view both of these statutory characteristics as naturally flowing from the reality that the person has been charged with a serious criminal offense and is subject to proceedings under R.C. 2945.38, and not as any particular indication of an intent to punish. Moreover, although periodic reviews of a person committed under R.C. 2945.39 include an assessment of his ability to stand trial, see R.C. 2945.401(C), that fact does not transform proceedings that are inherently civil into ones that are criminal.

{¶ 35} We therefore determine that R.C. 2945.39 is manifestly civil in its intent. As the dissent in the appellate court noted, "[I]ndividuals committed under R.C. 2945.39 must be released when they have been found to be no longer a mentally ill person subject to hospitalization by court order. * * * [T]he release provision emphasizes that the primary purpose of R.C. 2945.39 is to provide stricter confinement for mentally ill persons who are particularly dangerous. As noted by the United States Supreme Court in *Hendricks*, the confinement of the dangerously mentally ill 'is a legitimate nonpunitive governmental objective and has been historically so regarded.' 521 U.S. at 363, 117 S.Ct. 2072, 138 L.Ed.2d 501." 179 Ohio App.3d 584, 2008-Ohio-6245, 902 N.E.2d 1042, ¶ 87 (Wolff, P.J., dissenting).

{¶ 36} The question that arises next, under the second prong of the intent-effects test, is whether the statute operates in such a way that the statute's effects

negate the civil intent. We see nothing in the effects of the statutory framework that negates its civil intent. The same features that have caused us to conclude that the statute is intended to be remedial in nature with an overriding purpose of protecting the public also support the conclusion that the effects of the statute are remedial in nature and consistent with the remedial intent. In particular, R.C. 2945.39 does not implicate retribution or deterrence, does not require a finding of scienter, and provides that commitments under the statute must terminate when the person is no longer mentally ill and subject to hospitalization by court order.

{¶ 37} We conclude that R.C. 2945.39 is a civil statute. Consequently, a person committed under the statute need not be afforded the constitutional rights afforded to a defendant in a criminal prosecution. The judgment of the court of appeals on this issue is therefore reversed.

*B. Equal-Protection Considerations*

{¶ 38} The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides, "No State shall * * * deny to any person within its jurisdiction the equal protection of the laws." Ohio's Equal Protection Clause, Section 2, Article I of the Ohio Constitution, provides, "All political power is inherent in the people. Government is instituted for their equal protection and benefit * * *." These two equal-protection provisions are functionally equivalent and require the same analysis. *Eppley v. Tri-Valley Local School Dist. Bd. of Edn.,* 122 Ohio St.3d 56, 2009-Ohio-1970, 908 N.E.2d 401, ¶ 11; *State v. Thompson*, 95 Ohio St.3d 264, 2002-Ohio-2124, 767 N.E.2d 251, ¶ 11.

{¶ 39} The standard of review to be applied is one of rational basis. Pursuant to this level of review, a statute that does not implicate a fundamental right or a suspect classification does not violate equal-protection principles if it is rationally related to a legitimate government interest. *Eppley*, 122 Ohio St.3d 56, 2009-Ohio-1970, 908 N.E.2d 401, at ¶ 15, citing *Menefee v. Queen City Metro*

(1990), 49 Ohio St.3d 27, 29, 550 N.E.2d 181; *Oliver*, 123 Ohio St.3d 278, 2009-Ohio-5030, 915 N.E.2d 1205, ¶ 9.

**{¶ 40}** Ohio courts grant substantial deference to the legislature when conducting an equal-protection rational-basis review. *State v. Williams* (2000), 88 Ohio St.3d 513, 531, 728 N.E.2d 342. Classifications will be invalidated only if they " 'bear no relation to the state's goals and no ground can be conceived to justify them.' " *State v. Peoples*, 102 Ohio St.3d 460, 2004-Ohio-3923, 812 N.E.2d 963, ¶ 7, quoting *State v. Thompkins* (1996), 75 Ohio St.3d 558, 561, 664 N.E.2d 926.

**{¶ 41}** Appellee asserts, and the appeals court agreed, that "[c]ommitment under R.C. 2945.39 is substantially more restrictive" than under R.C. Chapter 5122. 179 Ohio App.3d 584, 2008-Ohio-6245, 902 N.E.2d 1042, ¶ 64. The court reasoned that R.C. 2945.39 applies only to persons who have been *accused* of committing serious violent offenses and not to persons who have been *convicted* of serious violent offenses or to persons who *have a history of committing* serious violent offenses but are not under indictment. Id. at ¶ 66. The court then held, "R.C. 2945.39 cannot reasonably effectuate the goal of providing more restrictive commitment to those who have committed dangerous crimes." Id. In addition, the court below saw no reasonable basis for the "more onerous procedures" it perceived for terminating commitment under R.C. 2945.39 than for terminating an ordinary civil commitment under R.C. Chapter 5122. On that basis, the court found an equal-protection violation. Id. at ¶ 67.

**{¶ 42}** Appellee's arguments that R.C. 2945.39 violates his right to equal protection rely in large part on *Jackson v. Indiana* (1972), 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435, and *Baxstrom v. Herold* (1966), 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620. In *Jackson*, the court held that the involuntary commitment of a defendant under an Indiana statute that amounted to "condemning him in effect to permanent institutionalization without the showing required for

commitment or the opportunity for release afforded by" statutes applicable to those not charged with offenses deprived the defendant of equal protection. Id. at 729, 92 S.Ct. 1845, 32 L.Ed.2d 435.

{¶ 43} In *Baxstrom*, the court held that the involuntary commitment under a New York statute of a mentally ill person who had completed his criminal sentence violated equal protection because the person did not receive the benefit of a judicial hearing to determine whether he was dangerous, a hearing he would have had if he had not been in prison at the time the civil commitment proceeding was instituted. Id. at 110. The court stated that there was "no conceivable basis for distinguishing the commitment of a person who is nearing the end of a penal term from all other civil commitments." Id. at 111-112.

{¶ 44} The state argues that R.C. 2945.39 does not violate equal-protection rights, because its procedures are justified by the state's interest in restraining mentally ill persons subject to hospitalization who have committed a serious crime. We agree.

{¶ 45} We accept as valid the arguments presented by the state and by the amicus curiae, Attorney General of Ohio, that a commitment under R.C. 2945.39 and related statutes has many of the same attributes as a commitment under R.C. Chapter 5122, and that the differences between the two are not as substantial as appellee asserts. For example, R.C. 2945.39(A)(2)(b) uses the term "mentally ill person subject to hospitalization by court order" and defines that term exactly as it is defined in R.C. 5122.01(B). See R.C. 2945.37(A)(7). Moreover, R.C. 2945.401(B) states that provisions of R.C. Chapter 5122 "regarding hospitalization or institutionalization shall apply to the extent they are not in conflict with this chapter."

{¶ 46} This court in *In re Burton*, 11 Ohio St.3d at 150-151, 11 OBR 465, 464 N.E.2d 530, upheld the constitutionality of R.C. Chapter 5122's standards for involuntary commitments in the face of due-process and equal-protection

challenges. Certainly, to the extent that R.C. 2945.39 incorporates many of those same standards, it does not violate equal-protection principles.

{¶ 47} R.C. 2945.39(A)(2)'s specific requirement that a court must make a threshold finding (by clear and convincing evidence) that the defendant committed the crimes he is charged with before ordering the defendant's commitment is a requirement not found in R.C. Chapter 5122. But this does not create an equal-protection violation, because the standards for commitment in this regard under R.C. 2945.39 are actually *stricter* than those under R.C. Chapter 5122. This factor distinguishes this case from *Jackson*, in which an equal-protection violation was found in part because the accused person in that case was subjected to "a more *lenient* commitment standard" than was applicable to others. (Emphasis added.) See 406 U.S. at 730, 92 S.Ct. 1845, 32 L.Ed.2d 435.

{¶ 48} The state concedes that there are some differences between the procedures by which a person is involuntarily committed through the probate court under R.C. Chapter 5122 and those procedures by which a person is involuntarily committed under R.C. 2945.39, as well as in the respective procedures once the commitment has been ordered. For example, those committed by a probate court are given earlier initial review hearings, compare R.C. 5122.15(C) and (H) with R.C. 2945.401(C); do not face the same level of scrutiny as to public-safety concerns, compare, e.g., R.C. 5122.15(C) with R.C. 2945.39(A)(2) and (D)(1); can more easily have their restrictions within the institution reduced, compare R.C. 5122.20 with R.C. 2945.401(D); and have less stringent procedures for the termination of the commitment, including possible termination of commitment by a chief medical officer pursuant to R.C. Chapter 5122 without the probate court's approval, compare R.C. 5122.21(A) with R.C. 2945.401(I).

{¶ 49} These statutory differences, however, are justified by the differing contexts of the two types of commitments. The fact that the subject of an R.C.

2945.39 commitment has been found to be a danger to others and *also* has been found to have committed a violent felony, such as the rape in this case, fundamentally distinguishes an R.C. 2945.39 commitment from one under R.C. Chapter 5122. It is a distinction that may permissibly be taken into account. Public-safety concerns reasonably justify assigning to the common pleas court that entered the commitment order an important role in the committed person's possible reduction in restrictions and in the determination of whether the commitment should be terminated. Although a person committed under R.C. 2945.39 may have to wait longer to receive an initial review hearing than a person committed under R.C. Chapter 5122, see R.C. 2945.401(C), that difference is not unreasonable, because such a person has already been subjected to the extensive evaluation procedures of R.C. 2945.38.

{¶ 50} Even though R.C. 2945.39 concerns only persons who are under indictment and does not include others with a history of committing serious felony offenses who are not under indictment, the General Assembly "could rationally conclude that an individual's present involvement in the criminal-justice system indicates a greater degree of dangerousness." 179 Ohio App.3d 584, 2008-Ohio-6245, 902 N.E.2d 1042, at ¶ 88 (Wolff, P.J., dissenting). Moreover, "because those committed under R.C. 2945.39 are particularly prone to commit serious felonies, the legislature could rationally distinguish [such persons from those] persons committed through the probate court for purpose of release procedures. * * * [S]ociety has a substantial interest in ensuring that those individuals who have been deemed particularly dangerous truly are no longer mentally ill persons subject to hospitalization by court order prior to their release from commitment." Id.

{¶ 51} Upon review, we hold that the procedures in R.C. 2945.39 and its related statutes that are less favorable to the person facing commitment than are the provisions governing a probate court commitment under R.C. Chapter 5122

are rationally related to legitimate government interests. Consequently, R.C. 2945.39 withstands equal-protection scrutiny, and appellee has not successfully borne his burden of establishing an equal-protection violation. See *State v. Bretz* (Dec. 30, 1999), 5th Dist. No. CA-98-001, 2000 WL 93739, * 9 (holding that an involuntary commitment under R.C. 2945.39 does not violate equal-protection rights).

**{¶ 52}** Because we hold that an involuntary commitment under R.C. 2945.39 does not violate equal protection, the judgment of the court of appeals is reversed on this issue also.

### C. Due-Process Considerations

**{¶ 53}** The inquiry into whether R.C. 2945.39 violates due-process protections is also governed by the rational-basis standard. As stated in *Jackson v. Indiana*, 406 U.S. at 738, 92 S.Ct. 1845, 32 L.Ed.2d 435, "due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." See also *State v. Sullivan* (2001), 90 Ohio St.3d 502, 506, 739 N.E.2d 788.

**{¶ 54}** A civil commitment for any purpose is a significant deprivation of liberty and due-process protections must be afforded to a person facing involuntary commitment. *Addington v. Texas* (1979), 441 U.S. 418, 425, 99 S.Ct. 1804, 60 L.Ed.2d 323. However, the right to be free from physical restraint is not absolute; the United States Supreme Court has consistently upheld statutes authorizing the forcible civil commitment of persons who are unable to control their behavior and who pose a danger to the safety of the public, "provided the confinement takes place pursuant to proper procedures and evidentiary standards." *Hendricks*, 521 U.S. at 356-357, 117 S.Ct. 2072, 138 L.Ed.2d 501; *Foucha v. Louisiana* (1992), 504 U.S. 71, 80, 112 S.Ct. 1780, 118 L.Ed.2d 437.

**{¶ 55}** In arguing that R.C. 2945.39 fails to comport with due process, appellee places great emphasis on the United States Supreme Court's statement in

*Jackson*, 406 U.S. at 738, 92 S.Ct. 1845, 32 L.Ed.2d 435, that "a person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future." Appellee also relies on this court's decision in *State v. Sullivan*, 90 Ohio St.3d 502, 739 N.E.2d 788. *Sullivan* held that former R.C. 2945.38, requiring all defendants found incompetent to stand trial to undergo treatment for a set amount of time for the purpose of restoring them to competency, violated due-process protections because the defendant's treatment could not be discontinued even if a court found that the defendant could not be restored to competency in the foreseeable future.[2]

**{¶ 56}** The state asserts that the court of appeals erred when it concluded by relying on *Sullivan* and other decisions that due process requires all efforts to restore competency to cease upon a court determination that a defendant is not restorable to competency within a reasonable time.

**{¶ 57}** The appellate court held that "[b]ecause commitment under R.C. 2945.39 involves attempts at restoration to competency beyond a reasonable period of time," a commitment under that statute amounts to a due-process violation. 179 Ohio App.3d 584, 2008-Ohio-6245, 902 N.E.2d 1042, ¶ 79. Due process requires that an indictment against a criminal defendant be dismissed upon a finding that the defendant cannot be restored to competency, the appeals court reasoned, because "it is fundamentally unfair for an incompetent defendant to have charges pending indefinitely when there is little hope that he may [be]

---

2. The General Assembly, in Am.Sub.S.B. No. 122, 149 Ohio Laws, Part I, 1081, effective February 20, 2002, amended the provisions of former R.C. 2945.38 that this court struck down in *Sullivan* to address the holding in that case. See id. at Section 3, 1097, and Legislative Service Commission Final Bill Analysis, Am.Sub.S.B. No. 122, 124th General Assembly, http://www.lsc.state.oh.us/analyses124/01-sb122.pdf (explaining the amendments and discussing *Sullivan*). No aspects of R.C. 2945.38, including the amendments enacted in the wake of *Sullivan*, are at issue in this case.

brought to trial and exonerated." Id. at ¶ 81. Finally, the appellate court held that R.C. 2945.39(A)(2)(a)'s use of a clear-and-convincing-evidence standard rather than a proof-beyond-a-reasonable-doubt standard for determining whether an incompetent defendant committed the charged offense violates due process. Id. at ¶ 82.

{¶ 58} The appellate court's conclusions appear to be based on a belief that the statute's primary goals are to punish the defendant and restore his competency to stand trial. However, as discussed in our analysis above, R.C. 2945.39 is a civil statute with a primary goal of protecting the public. It is of great significance to our due-process inquiry that R.C. 2945.39(D)(1) requires the court to order the least-restrictive commitment alternative available consistent with public safety and the defendant's welfare, while also emphasizing that the court "shall give preference to protecting public safety."

{¶ 59} It is apparent that a person committed under R.C. 2945.39 is not committed "solely" on account of his incapacity to proceed to trial, unlike the defendant in *Jackson*, 406 U.S. at 738, 92 S.Ct. 1845, 32 L.Ed.2d 435. Rather, such a person is committed only after being found by clear and convincing evidence to be mentally ill and subject to hospitalization by court order under R.C. 5122.01(B), through the application of R.C. 2945.39(A)(2) and 2945.37(A)(7), and being found to be a danger to the public because he was determined to have committed the offense with which he was charged. See *Bretz*, 5th Dist. No. CA-98-001, 2000 WL 93739, * 7 (upholding the constitutionality of R.C. 2945.39, and distinguishing *Jackson* because in *Jackson*, "there was no 'affirmative proof' that the accused had committed criminal acts or was otherwise dangerous"). If the person at some point is no longer mentally ill and subject to hospitalization by court order, his commitment under R.C. 2945.39 will terminate, subject to additional court proceedings. R.C. 2945.401(J)(1)(a). These statutory

features are similar to those of the statute upheld in *Hendricks*. See 521 U.S. at 352-353, 117 S.Ct. 2072, 138 L.Ed.2d 501.

{¶ 60} The clear-and-convincing-evidence standard of R.C. 2945.39(A)(2) for determining whether the defendant committed the crime charged does not violate the defendant's due-process rights. Instead, a trial court's finding under this evidentiary standard that the defendant has committed the offense charged is used only to determine the defendant's degree of dangerousness.

{¶ 61} The state asserts that *Sullivan* does not support appellee's argument that his due-process rights were violated here. The purpose of the commitment in *Sullivan*, which involved the former version of R.C. 2945.38, was to restore the defendant to competency in order to stand trial. Because there was no probability that competency could be restored within the time set by the former statute, the mandatory treatment period bore no rational relationship to the purpose of commitment, and, therefore, the defendant's due-process rights were violated. See *Sullivan*, 90 Ohio St.3d at 508, 739 N.E.2d 788. Our limited decision in *Sullivan*, however, has no application to this case, which involves the distinctly different procedures of R.C. 2945.39. The overriding purpose of this statute is to protect the public from a person who is dangerously mentally ill, has perpetrated felonious conduct, and cannot presently be tried because of his mental incompetency.

{¶ 62} Thus, we conclude that R.C. 2945.39 and 2945.401 do not violate a defendant's due-process rights by allowing the indictment to remain intact, by allowing continued efforts to restore the defendant to competency, or by permitting a defendant to be committed for a term equal to the maximum term of imprisonment that he could receive for the most serious offense charged. "Although * * * a defendant may be committed until the expiration of the maximum term of imprisonment that he could have received for the charged

offense, due process is satisfied by the fact that he may be released sooner if he is no longer subject to hospitalization by court order." *Williams*, 179 Ohio App.3d 584, 2008-Ohio-6245, 902 N.E.2d 1042, at ¶ 90 (Wolff, P.J., dissenting). Moreover, as the dissent correctly observed, principles of due process do not prevent a person committed under R.C. 2945.39 from being reevaluated for competency. If competency is restored while the person is still mentally ill, he can "be tried on the offense while remaining committed for his mental illness. R.C. 2945.401(J)(2)." Id. at ¶ 91.

{¶ 63} For the reasons expressed herein, we conclude that the nature and duration of the commitment that occurs under R.C. 2945.39 bear a reasonable relationship to the purpose for which the person is committed. See *Jackson*, 406 U.S. at 738, 92 S.Ct. 1845, 32 L.Ed.2d 435.

{¶ 64} We hold that an involuntary commitment under R.C. 2945.39 does not violate principles of due process. The judgment of the court of appeals is reversed on this issue.

### IV. Conclusion

{¶ 65} The crux of appellee's arguments is that every involuntary commitment of the type at issue here should occur through a probate court proceeding under R.C. Chapter 5122, but we hold that such a practice is not constitutionally required. It is reasonable to provide, as R.C. 2945.39 does, that a common pleas court that already has had extensive interaction with a defendant under R.C. 2945.38 can continue to exercise jurisdiction over that defendant; an involuntary commitment in this situation need not be exclusively pursued in a probate court to be constitutional. And even though an R.C. Chapter 5122 commitment may be one way to handle the involuntary commitment of a defendant who has committed a serious offense of violence and who is not presently competent to stand trial, the availability of procedures under R.C. Chapter 5122 does not stand in the way of the General Assembly's ability to

create alternative procedures for persons who pose an especially high degree of risk to the safety of the public.

{¶ 66} We hold that because R.C. 2945.39 is civil in nature, a person committed under the statute need not be afforded the constitutional rights afforded to a defendant in a criminal prosecution. We also hold that an involuntary commitment under R.C. 2945.39 does not violate principles of equal protection or due process. The judgment of the court of appeals is reversed, and the judgment of the trial court is reinstated.

Judgment reversed.

LUNDBERG STRATTON, O'CONNOR, and O'DONNELL, JJ., concur.

PFEIFER and LANZINGER, JJ., dissent.

BROWN, C.J., not participating.

_____

**LANZINGER, J., dissenting.**

{¶ 67} I respectfully dissent from the majority's holding that R.C. 2945.39 is civil in nature.

{¶ 68} First, the General Assembly enacted R.C. 2945.39 as part of Ohio's criminal code. Ohio already has a civil commitment process pursuant to R.C. Chapter 5122 regarding those who are mentally ill and R.C. Chapter 5123 regarding those who are developmentally disabled.

{¶ 69} Second, tying the length of a criminal defendant's commitment to the maximum possible prison term for the most serious offense also indicates that the commitment is criminal in nature. If the maximum period of commitment is reached without the defendant's becoming competent to stand trial, he or she is discharged, unless the state seeks civil commitment. R.C. 2945.401(J)(1)(b). In other words, the general division of the common pleas court no longer has the authority to punish the defendant for the offense once the time has been served.

{¶ 70} Finally, unlike a person committed under the civil process, a defendant who is committed under R.C. 2945.39 remains under a pending indictment.  The proceeding occurs as part of the defendant's criminal case and, therefore, the defendant should be afforded all the rights of a criminal defendant.

PFEIFER, J., concurs in the foregoing opinion.

_____

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and Carley J. Ingram and Melissa M. Ford, Assistant Prosecuting Attorneys, for appellant.

Anthony Comunale, for appellee.

Richard Cordray, Attorney General, Benjamin C. Mizer, Solicitor General, Stephen P. Carney, Deputy Solicitor, and Jeffrey R. Loeser, Assistant Solicitor, urging reversal for amicus curiae, Ohio Attorney General.

_____