[Cite as *In re J. M.*, 2013-Ohio-5896.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

IN RE:  J.M.  :  APPEAL NO. C-130643
TRIAL NO. F09-1692X

:  *O P I N I O N.*

Civil Appeal From:  Hamilton County Juvenile Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  December 24, 2013

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Mark Sauers*, Assistant Prosecuting Attorney, for Appellee Hamilton County Department of Job and Family Services,

*Lisa Elliott Lee*, for Appellee Guardian Ad Litem,

*Kacy C. Eaves*, for Appellee Amber M.,

*Hugh P. McCloskey*, for Appellant Debra U.

Please note:  this case has been removed from the accelerated calendar.

**DEWINE, Judge.**

{¶1} This is an appeal from a judgment of the Hamilton County Juvenile Court denying a nonrelative caregiver's motion for custody of a child and granting permanent custody to the Hamilton County Department of Job and Family Services ("HCJFS"). Counsel for the caregiver has filed a brief stating that he is unable to find any error that would entitle his client to relief, and has requested that this court independently review the record pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). Counsel also has moved for permission to withdraw as counsel. We have reviewed the record and agree with counsel's conclusion, so we overrule counsel's motion to withdraw and affirm the judgment below. We conclude, however, that *Anders* briefs are not appropriate in appeals from judgments terminating parental rights or determining legal custody, and we will no longer accept these briefs in such cases.

I.

{¶2} J.M., the child who is at the center of this appeal, was born in January 2009. Shortly after his birth, J.M.'s biological mother, Amber, determined that she did not wish to care for J.M. and entered into a private arrangement with Debra by which Debra agreed to care for J.M. Although she never obtained legal custody of J.M., Debra was his sole caregiver for approximately 18 months.

{¶3} Debra filed a motion for custody of J.M. in March 2010, and the magistrate ordered that a custody investigation be performed. In July 2010, while Debra's custody petition was pending, HCJFS was granted interim custody of Amber's children, including J.M. HCJFS permitted J.M. to remain in Debra's home pending the results of a home study. HCJFS initially sought reunification of all children, including

J.M., with Amber, and Debra agreed to hold her pending motion for custody of J.M. in abeyance for consideration if reunification was not possible.

{¶4} The home study revealed that Debra had been diagnosed with multiple mental health illnesses, including paranoid schizophrenia, borderline personality disorder, and adjustment disorder. The study also described a history of substance abuse, frequent allegations of neglect involving her biological daughter, and numerous criminal contacts, including menacing and assault convictions. Based largely on these findings, the court granted HCJFS's request to remove J.M. from Debra's care in December 2010.

{¶5} After learning the results of the home study, Amber determined that she no longer wanted J.M. to remain in Debra's care and instead supported a plan for adoption through HCJFS. Amber signed a permanent surrender of J.M. to HCJFS, and permanency proceedings were initiated. Debra was the only party opposing a grant of permanent custody to HCJFS, and the magistrate considered her competing custody motion as part of the permanency proceedings.

{¶6} Based on the evidence presented at the permanency hearings, the magistrate found that a grant of permanent custody to HCJFS was in J.M.'s best interests, and denied Debra's custody motion. Debra filed objections to the decision, and the trial court affirmed the magistrate's findings of fact and conclusions of law.

{¶7} Counsel for Debra filed an *Anders* brief and moved to withdraw from representation.

II.

{¶8} In *Anders*, the United States Supreme Court addressed the potential ethical conflict faced by an attorney appointed by the court to represent an indigent criminal defendant in his first appeal as of right, where such an attorney has an

3

obligation to advocate zealously on behalf of his client without running afoul of the ethical bar against bringing frivolous appeals.

{¶9} The *Anders* decision was derived from a line of cases involving an indigent criminal defendant's right to counsel under the Sixth Amendment and the Due Process and Equal Protection Clauses of the Fourteenth Amendment. *See, e.g., Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). The *Anders* Court held that, for counsel to fulfill his constitutional obligations, he must not withdraw from representation except where an appeal would be "wholly frivolous," and even then, only after providing the court with "a brief referring to anything in the record that might arguably support the appeal." *Anders* at 744. The defendant must then be given the opportunity to raise any additional arguments, and the reviewing court must conduct an independent review to determine whether there are any arguably meritorious claims. *Id.* If the court concludes that arguable claims exist, the court must appoint new appellate counsel to represent the defendant in his appeal. *Id.*

{¶10} Since its decision in *Anders*, the United States Supreme Court has clarified that the procedure annunciated in *Anders* is "prophylactic" in nature, and that states are "free to adopt different procedures, so long as those procedures adequately safeguard a defendant's right to appellate counsel." *Smith v. Robbins*, 528 U.S. 259, 265, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000).

III.

{¶11} We recognize that we have previously allowed *Anders* appeals in civil permanent-custody proceedings. *See In re D.C.*, 1st Dist. Hamilton No. C-090466, 2009-Ohio-5575. Some other Ohio appellate districts have likewise permitted such appeals, though often without extensive analysis. *See, e.g., Morris v. Lucas Cty.*

4

*Children Servs. Bd.*, 49 Ohio App.3d 86, 550 N.E.2d 980 (6th Dist.1989). But many other states have reached the opposite conclusion, declining to extend *Anders* to termination cases. *See, e.g., N.S.H. v. Florida Dept. of Children and Family Servs.*, 843 So.2d 898, 902 (Fla.2003); *In re Sade C.*, 13 Cal.4th 952, 55 Cal.Rptr.2d 771, 920 P.2d 716 (1996); *A.L.L. v. People*, 226 P.3d 1054 (Colo.2010). Although we have allowed such appeals in the past, we decide today that the *Anders* procedure is not appropriate in permanent-custody cases.

{¶12} In so holding, we note that the ruling in *Anders* was a limited one, addressing counsel's role in assisting an indigent criminal defendant wishing to appeal a criminal conviction. Accordingly, our local appellate rules explicitly limit no-error briefs to criminal appeals. *See* 1st Dist. Loc.R. 16.2.

{¶13} We are also mindful that *Anders* "has, from the beginning, received 'consistent and severe criticism.' " *Robbins*, 528 U.S. at 281, 120 S.Ct. 746, 145 L.Ed.2d 756, quoting *Sade C.* at 979, fn. 7. Commentators have contended that *Anders* enables counsel to shirk his duty to fully represent his client, a problem exacerbated by the scarce resources available to court-appointed attorneys. *Robbins* at 282, fn. 13. *Anders* has resulted in an unusual reversal of roles, whereby the client's advocate judges the merits of the case and the court acts as advocate for the client. *See A.L.L.* at 1061. Thus, *Anders* "represents a radical departure from the traditional role of appellate judges as neutral decision makers[.]" *N.S.H.* at 902. Critics further note that *Anders* puts forth confusing circular directives, requiring counsel who deems an appeal to be "wholly frivolous" to brief any arguable issues, while at the same time holding that any issue that is "arguable" is not "wholly frivolous." *Robbins* at 282.

{¶14} In addition, critics of *Anders* assert that it has resulted in "a failure of equal protection" in that it "creates two distinct classes of appellate review":

[W]hat is particularly disturbing to most judges who have reviewed *Anders* appeals is the inconsistency of the appellate system created by *Anders*. An indigent defendant whose appointed counsel states that there are no arguable issues to raise is entitled to the full and independent review of the court to discern whether the attorney has missed points of arguable error. However, neither the indigent defendant whose attorney does not file an *Anders* brief nor the nonindigent defendant gets this kind of review from the court.

Warner, Anders *in the Fifty States: Some Appellants' Equal Protection is More Equal Than Others',* 23 Fla.St.U.L.Rev. 625, 642-662 (1996). As the *Robbins* Court explained, "to the extent this criticism has merit, our holding today that the *Anders* procedure is not exclusive will enable States to continue to experiment with solutions to this problem." *Robbins* at 282, fn. 13. Given the limited holding of *Anders* and the problems with its implementation, we are reluctant to extend this procedure into other realms.

{¶15} Our holding is in no way meant to discount the magnitude of the parental rights at stake in a permanent-custody case. Indeed, we recognize that permanent-custody proceedings implicate a parent's fundamental due-process rights and, as such, parents must be afforded substantial procedural protections. *In re Hoffman*, 97 Ohio St.3d 92, 2002-Ohio-5368, 776 N.E.2d 485, ¶ 14. We find, however, that a parent's rights would be better protected where counsel is compelled to search the record and present arguments for review.

{¶16} The records in termination proceedings are typically extensive and highly fact-based. *Anders* review in a permanent-custody case places an inordinate burden on the appellate court to scour the voluminous record searching for error, a

task that we are "ill-equipped" to perform without the "active and meaningful assistance of counsel." *State v. Tsibouris*, 1st Dist. Hamilton Nos. C-120414 and C-120415, 2013-Ohio-3324. It is far more beneficial to the court and to the client for appellate counsel, who has necessarily reviewed the record in full, to brief the merits of the case and set forth arguments for the court's consideration.

{¶17} We are confident in the ability of attorneys to craft nonfrivolous arguments in permanent-custody appeals. Custody determinations are necessarily fact-specific and, as such, they are almost never entirely one-sided. It is, therefore, difficult to imagine any appeal challenging the weight of the evidence or a best-interest determination that would be deemed frivolous. Additionally, while an attorney's duty of candor forbids him from knowingly misstating material fact or law and from failing to disclose contrary legal authority, *see* Prof.Cond.R. 3.3, the Rules of Professional Conduct ("Rules") permit a "good faith argument for an extension, modification, or reversal of existing law." *See* Prof.Cond.R. 3.1. The comments to Prof.Cond.R. 3.1 explain that an appeal is "not frivolous even though the lawyer believes that the client's position ultimately will not prevail." *See* Prof.Cond.R. 3.1, comment 2.[1] Thus, the Rules distinguish nonmeritorious appeals from those that are wholly frivolous.

{¶18} The comments further indicate that an attorney's duty to refrain from filing frivolous appeals is subordinate to his obligations to a client with a constitutionally-protected right to the assistance of counsel. *See* Prof.Cond.R. 3.1, comment 3. While this comment refers specifically to criminal matters, we believe that similar logic applies where there is a constitutional guarantee to counsel when appealing decisions terminating parental rights. *See State ex rel. Heller v. Miller,* 61 Ohio St.2d 6,

---

[1] Although the comments to the Rules do not create binding obligations, they do "provide guidance for practicing in compliance with the rules." *See* Prof.Cond.R, Scope, section 14.

399 N.E.2d 66 (1980). Under these circumstances, an attorney may effectively represent his client without running afoul of his duties to the court where he does not deceive the court on matters of fact and law, and where he makes a good-faith argument on behalf of his client, regardless of the ultimate unpersuasiveness of that argument. *See ABA Standards for Criminal Justice: Defense Function* 4-8.3 (3d Ed.1993), *Criminal Appeals* 21-3.2 (2d Ed.1986). Even where the attorney concludes that his client is unlikely to prevail, the attorney may still fulfill his role as an advocate, ensuring that his client's arguments are heard by the court and assisting his client in navigating the appellate process. *A.L.L.*, 226 P.3d at 1060-1061.

IV.

{¶19} In sum, we conclude that the *Anders* procedures are not appropriate in appeals from decisions terminating parental rights or awarding legal custody, and going forward, we will no longer accept such briefs.

{¶20} We recognize, however, the need for swift resolution of matters involving child custody. And we also recognize that counsel filed his brief in this case in reliance on our prior practice of permitting *Anders* appeals in civil-custody cases. With these considerations in mind, we independently have reviewed the record under the *Anders* procedure. We agree with counsel's conclusion that the proceedings below were free of error prejudicial to Debra and that no grounds exist to support a meritorious appeal. Therefore, we overrule counsel's motion to withdraw from representation, and affirm the judgment of the trial court.

Judgment affirmed.

**HENDON, P.J.,** and **HILDEBRANDT, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.