[Cite as *State v. Jackson*, 2014-Ohio-613.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-130240 |
| | | TRIAL NO. B-1004540 |
| Plaintiff-Appellee, | : | |
| | | |
| vs. | : | *O P I N I O N.* |
| | | |
| STEVEN JACKSON, | : | |
| | | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Motion to Withdraw As Counsel for Appellant is Granted, New Counsel for Appellant is Appointed, Further Briefing is Ordered, and Appeal is Ordered to be Resubmitted

Date of Judgment Entry on Appeal:  February 21, 2014

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Paula E. Adams*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Michaela M. Stagnaro*, for Defendant-Appellant.

Please note:  this case has been removed from the accelerated calendar.

**DEWINE, Judge.**

{¶1} This appeal presents a threshold question of whether we should extend the procedure set forth in *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), to appeals from civil orders of involuntary commitment. We decline to do so.

{¶2} Appointed counsel in this case has filed an "*Anders* no-error brief" in which she states that she is unable to find any error that would entitle her client to relief, requests that this court independently review the record, and moves for permission to withdraw. We recently held that no-error briefs were not appropriate in the context of permanent-child-custody appeals, and we reach a similar conclusion here. *See In re J.M.*, 1st Dist. Hamilton No. C-130643, 2013-Ohio-5896. The *Anders* decision by its terms only applies to criminal appeals, and our local rules likewise limit *Anders* briefs to criminal cases. Further, we have serious concerns about the effectiveness of the *Anders* procedure, and are reluctant to extend this procedure to other contexts. We, therefore, grant counsel's motion to withdraw, and appoint new counsel to argue the merits of the case.

I.

{¶3} Steven Jackson was charged with escape for leaving the Volunteers of America halfway-house program without permission in July 2010. He entered an insanity plea, and following a bench trial the court found him not guilty by reason of insanity ("NGRI"). As required by R.C. 2945.40, the court held a hearing within ten days to determine whether Mr. Jackson was a mentally ill person subject to hospitalization. The court found Mr. Jackson to be subject to hospitalization and ordered his commitment to Summit Behavioral Healthcare Center ("Summit").

2

{¶4}   R.C. 2945.401 governs the continuing jurisdiction of the trial court over a person committed following an incompetency finding or NGRI acquittal. This section requires the court to conduct a review hearing six months after the commitment order, and then every two years following the initial review. R.C. 2945.401(C). Additionally, the subject may request a hearing on the conditions of the confinement as frequently as every six months. *Id.* A committed person is entitled at every hearing to be represented by counsel, to have an evaluation conducted by an independent expert, to present evidence and cross-examine witnesses, and to testify or remain silent. *See* R.C. 2945.40(C).

{¶5}   The court held a hearing to review Mr. Jackson's commitment in April 2013. Counsel for the state and for Mr. Jackson stipulated to the report submitted by Summit, and, based on the recommendations in the report, the court determined that Mr. Jackson remained a mentally ill person subject to hospitalization and ordered his continued commitment. Mr. Jackson notified the court of his desire to appeal the decision, and the court appointed counsel to represent Mr. Jackson on appeal.

{¶6}   Counsel for Mr. Jackson has filed an *Anders* brief, certifying that she can find no meritorious issues to argue on appeal and asking this court to conduct an independent review of the record. Counsel also has moved for permission to withdraw from representation.

II.

{¶7}   In *J.M.*, we concluded that the *Anders* procedure was not appropriate in civil appeals from orders terminating parental rights. We noted, in part, that the *Anders* decision addressed only counsel's duties to assist indigent clients appealing a criminal conviction and that our local appellate rules limit no-error briefs to criminal appeals. *See J.M.*, 1st Dist. Hamilton No. C-130643, 2013-Ohio-5896 at ¶ 12; 1st Dist.

3

Loc.R. 16.2. In light of our holding in *J.M.*, we now consider whether to extend *Anders* into the realm of involuntary commitments.

{¶8} We find no Ohio cases permitting the use of the *Anders* procedure in involuntary-commitment appeals, nor do we find any Ohio cases discussing the appropriateness of extending the procedure to such cases. The few states outside of Ohio to have considered the issue are divided. States that have applied the procedure to involuntary-commitment cases emphasize the comparable restraints on physical liberty resulting from civil commitment and criminal incarceration, as well as the need to ensure that indigent appellants are placed on equal footing with those who have the ability to retain private counsel. *See Pullen v. State*, 802 So.2d 1113 (Fla.2001); *In re McCoy*, 360 S.C. 425, 602 S.E.2d 58 (2004); *In re Rules of the Supreme Court and Court of Appeals*, 2009 Ark. 449 (2009); *In re McQueen*, 145 Ill.App.3d 148, 495 N.E.2d 128 (1986); *State ex rel. L.E.H.*, 228 S.W.3d 219 (Tex.App.2007). Those declining to extend *Anders* to involuntary-commitment appeals emphasize the civil nature of such proceedings and conclude that the *Anders* procedure does not reduce the likelihood of erroneous deprivations of liberty. *See Conservatorship of Ben C.*, 40 Cal.4th 529, 53 Cal.Rptr.3d 856, 150 P.3d 738 (2007); *In re Leon G.*, 200 Ariz. 298, 26 P.3d 481 (2001); *In re Richard A.*, 146 N.H. 295, 771 A.2d 572 (2001).

{¶9} The Ohio Supreme Court has made clear that involuntary-commitment proceedings are civil in nature. *See State v. Williams*, 126 Ohio St.3d 65, 2010-Ohio-2453, 930 N.E.2d 770, ¶ 37 (incompetency commitments under R.C. 2945.39 and recommitments under R.C. 2945.401 are civil in nature); *see also State v. Tuomala*, 104 Ohio St.3d 93, 2004-Ohio-6239, 818 N.E.2d 272, ¶ 16 (a determination under R.C. 2945.40 that a criminal defendant was insane at the time

4

of the alleged acts is an acquittal, not a conviction). Thus, while Mr. Jackson's involvement with the court was initiated by a criminal indictment, this ceased to be a criminal matter once he was acquitted of the charges by reason of insanity.

{¶10} The *Anders* decision was aimed at safeguarding an indigent criminal defendant's constitutional right to appellate counsel, a right derived from the convergence of a criminal defendant's Sixth Amendment right to the assistance of counsel and the Fourteenth Amendment's guarantees of due process and equal protection in criminal appeals. *Smith v. Robbins*, 528 U.S. 259, 264, 276-278, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000). Unlike in cases of criminal incarceration, the constitutional right to counsel in civil commitment proceedings originates solely from the due process clause. *In re Fisher*, 39 Ohio St.2d 71, 82, 313 N.E.2d 851 (1974). While we recognize the significant interests at stake where a person is involuntarily subjected to restraints on his physical liberty, we have been told that civilly-committed persons "need not be afforded the constitutional rights afforded to a defendant in a criminal prosecution." *Williams* at ¶ 37.

{¶11} Also important to our analysis are our increasing doubts about the efficacy of the *Anders* procedures. We have commented previously on the " 'consistent and severe criticism' " *Anders* has received since its inception. *J.M.*, 1st Dist. Hamilton No. C-130643, 2013-Ohio-5896 at ¶ 13, quoting *Robbins* at 281. Commentators contend, among other things, that the procedure permits counsel to neglect his duty to provide zealous representation and creates inconsistent levels of appellate review. *J.M.* at ¶ 13-14. We find these criticisms to have some merit. In view of our concerns, we have concluded that it is "far more beneficial" to both the court and the client for counsel to present arguments in support of his client's cause. *Id.* at ¶ 16.

{¶12} Because of the civil nature of involuntary commitments and our doubts about the effectiveness of the *Anders* procedure, we think it unwise to extend *Anders* into this realm. Therefore, we hold that *Anders* is not applicable to appeals from involuntary-commitment orders.

{¶13} Going forward, we reemphasize the distinction between frivolous arguments and those that are merely nonmeritorious. *J.M.* at ¶ 17. And we note that an attorney will fulfill his obligations to his client and the court "where he does not deceive the court on matters of fact and law, and where he makes a good-faith argument on behalf of his client, regardless of the ultimate unpersuasiveness of that argument." *Id.* at ¶ 18. We trust that appellate attorneys will be able to make good-faith arguments on behalf of their clients. For example, counsel might challenge the weight of the evidence or the effectiveness of counsel below. Moreover, counsel must ensure that the trial court has adhered to its statutory duties, such as the obligations to notify a subject of his rights under R.C. 2945.40(C) and to conduct hearings within the mandated timeframes. The role of appellate counsel undeniably contemplates more than just making successful arguments on appeal, and where counsel truly cannot fathom any arguable issue, counsel "may still fulfill his role as an advocate [by] ensuring that his client's arguments are heard by the court and assisting his client in navigating the appellate process." *Id.*

III.

{¶14} We decline to conduct *Anders* review in civil-commitment appeals. We grant appellate counsel's motion to withdraw, and appoint attorney William R. Gallagher, Attorney Registration No. 0064683, to represent Mr. Jackson in his appeal. We further order new counsel to file a brief on the merits on or before March

6

31, 2014, or otherwise dismiss the appeal, and counsel for the state to file a responsive brief on or before April 30, 2014.

Judgment accordingly.

**CUNNINGHAM, P.J.,** and **HILDEBRANDT, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.