[Cite as *State v. Hamilton*, 2024-Ohio-5132.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Andrew J. King, J. |
| -vs- | : | |
| | : | |
| CHARLES A. HAMILTON | : | Case No. 2024 AP 02 0006 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Court of Common
Pleas, Case No. 2021 CR 04 0134


JUDGMENT:     Affirmed


DATE OF JUDGMENT:     October 24, 2024


APPEARANCES:

For Plaintiff-Appellee

KRISTINE W. BEARD
125 E. High Avenue
New Philadelphia, OH  44663

For Defendant-Appellant

AARON KOVALCHIK
401 Tuscarawas Street West
Suite 500
Canton, OH  44702

*King, J.*

{¶ 1}    Defendant-Appellant Charles A. Hamilton appeals the February 8, 2024 judgment of the Tuscarawas County Court of Common Pleas committing Hamilton to a medium security forensic psychiatric facility. Appellee is the state of Ohio. We affirm the trial court.

FACTS AND PROCEDURAL HISTORY

{¶ 2}    A.H. met Hamilton online in June of 2002. Shortly thereafter, A.H. moved herself and her four daughters from Arkansas to Ohio to live with Hamilton and the two were married.

{¶ 3}    Upon moving to Ohio, the victim in this matter, L.M., was seven-years-old. Transcript of evidentiary hearing, March 3, 2023 (T.) at 10. When L.M. was 13, Hamilton put his hands in L.M.'s underwear and rubbed her vagina. Thereafter, Hamilton had sexual contact with L.M. on multiple occasions. T. 14. When L.M. was between the ages of 13 and 15, Hamilton put his fingers in L.M.'s vagina on at least 5 occasions, and inserted his penis in her vagina on one occasion. These incidences took place in L.M.'s bedroom, on a 4-wheeler, while L.M. was sleeping in the same bed as Hamilton's daughter H.H., and in Hamilton's car. T. 15-16, 40. These incidents scared L.M. because Hamilton was her stepfather. T. 17.

{¶ 4}    L.M. wrote about the abuse in her journals. In an entry dated April 11, 2010 she wrote of one incident describing her heart beating fast, not knowing what to do, and just laying there while Hamilton continued and "it hurt." State's exhibit 2.

{¶ 5}    L.M. told two close friends and H.H. of the abuse, but did not tell an adult until shortly before her 16th birthday when L.M. told S.R., an adult friend of the family,

about Hamilton's behavior. L.M. had been staying with S.R., and her disclosure came after a party at S.R.'s home where an adult male followed L.M. into a shed and tried to corner her. The event "brought back all the abuse by [Hamilton]" prompting L.M. to tell S.R. of Hamilton's behavior. T. 21. The following day, S.R. contacted A.H. and A.H. spoke with L.M. T. 21, 64.

{¶ 6}  A.H. did not believe her daughter's allegations. She attributed the allegations to "behavioral issues" and possibly a "ploy for attention." At the time, A.H. did not connect L.M.'s behavioral issues, such as cutting herself, with having been sexually assaulted. It was not until 2018 when A.H.'s sister disclosed similar abuse that A.H. believed L.M. T. 65-66. A.H. did, however, confront Hamilton regarding L.M.'s allegations at the time of her disclosure. Hamilton did not deny the allegations. Rather he said only "we need to get her help." T. 65.

{¶ 7}  In 2018, A.H. and Hamilton separated and Hamilton moved to Arkansas. In 2020, Tuscarawas County Sheriff's Office Detective Jeff Moore investigated the allegations against Hamilton. L.M. provided Detective Moore with her journals and Moore enlisted the assistance of law enforcement in Arkansas to interview Hamilton. Moore provided the Arkansas detectives with Hamilton's address and a photograph of Hamilton. When detectives arrived at the given address, a man matching Hamilton's description answered the door but denied being Hamilton. T. 85.

{¶ 8}  On April 30, 2021, the Tuscarawas County Grand jury returned an indictment charging Hamilton with one count of forcible rape with a sexually violent offender specification, a felony of the first degree, and three counts of gross sexual imposition, felonies of the fourth degree. These charges pertained to L.M. Hamilton was

also charged with two counts of gross sexual imposition, felonies of the third degree, which pertained to K.M.

{¶ 9} Hamilton entered pleas of not guilty and on October 8, 2021, filed a motion for a competency evaluation pursuant to R.C. 2945.371. The trial court granted the motion and ordered the Forensic Diagnostic Center to prepare a competency evaluation report. Dr. Andrew Risner conducted the evaluation and found that while Hamilton was capable of understanding the legal proceedings, he was incapable of assisting in his own defense. The trial court therefore ordered Hamilton to participate in out-patient competency treatment. Following a six-month review, the trial court ordered Hamilton to continue competency treatment.

{¶ 10} A competency hearing was held on February 2, 2023. Hamilton and the State stipulated to a report from the Forensic Diagnostic Center which indicated Hamilton was incompetent and unrestorable. The same day, the State filed a Motion to Retain Jurisdiction pursuant to R.C. 2945.39(A)(2).

{¶ 11} A hearing was held on the state's motion on March 3, 2023 during which the above outlined facts were elicited. Hamilton and the State submitted written closing arguments on March 31, 2023.

{¶ 12} On May 9, 2023, the trial court issued its decision finding by clear and convincing evidence that Hamilton had committed the offense of forcible rape and further is a mentally ill person subject to court order. The trial court therefore granted the state's motion to retain jurisdiction and set a hearing to address placement.

{¶ 13} Hamilton filed an appeal challenging the trial court's decision to retain jurisdiction. On June 27, 2023, this court dismissed Hamilton's appeal for lack of a final appealable order.

{¶ 14} Thereafter the trial court requested an evaluation and report from Dr. Jaime Adkins for the purpose of determining Hamilton's placement. Dr. Adkins' August 2023 report indicated placement in the community would be the least restrictive placement for Hamilton. The State requested a second evaluation and the trial court granted the same. Dr. Brian O'Reilly conducted the second evaluation and report.

{¶ 15} A placement hearing was conducted on January 23, 2024. Both doctors testified at the placement hearing. Dr. Adkins indicated she could not stand on her previous recommendation because it had been too long since she had last evaluated Hamilton. Transcript of placement hearing (T.(II)), 11. However, she also stated that if there had been no significant changes in Hamilton's life over the preceding year, then her recommendation would be the same. T(II). 12.

{¶ 16} Dr. O'Reilly concluded the least restrictive placement for Hamilton was in the community with supervised monitoring through forensic monitoring services. T(II). 17, 29. While he had concerns about Hamilton's potential contact with adolescents in the community, he noted Hamilton had been in the community under supervised electronic monitoring for two years without issue. T(II). 23-27. Dr. O'Reilly further recommended Hamilton comply with a neuropsychological assessment and a psychiatric assessment.

{¶ 17} Katie Wilson, a forensic monitor and community navigator from Springvale was also present at the hearing. She testified she had not met Hamilton but was familiar with his case. She stated she would be directly or indirectly responsible for carrying out

the recommended terms of Hamilton's release. T. 32. She stated Hamilton was not interested in taking the medications prescribed by the nurse practitioner, and further testified she would be concerned Hamilton would be exposed to vulnerable populations in the community. Additionally, services recommended by Dr. O'Reilly were not available through Springvale. T(II). 33- 34.

{¶ 18} The State and counsel for Hamilton submitted written closing arguments. On February 8, 2024, the trial court issued its judgment finding the least restrictive alternative consistent with public safety and Hamilton's welfare was a medium security forensic psychiatric facility. The trial court committed Hamilton to Heartland Behavioral Healthcare for a maximum term of 10 years based on the trial court's previous finding that Hamilton had committed the offense of rape.

{¶ 19} Hamilton filed an appeal and the matter is now before this court of consideration. He raises three assignments of error as follow:

I

{¶ 20} "THERE WAS NOT CLEAR AND CONVINCING EVIDENCE TO SUPPORT THE TRIAL COURT RETAINING JURISDICTION OVER APPELLANT."

II

{¶ 21} "THE TRIAL COURT FAILED TO MAKE A FINDING THAT APPELLANT IS A DANGER TO HIMSELF AND OTHERS."

III

{¶ 22} "THE TRIAL COURT'S FINDING THAT A MEDIUM SECURITY FORENSIC PSYCHIATRIC FACILITY AS THE LEAST RESTRICTIVE ALTERNATIVE FOR PLACEMENT WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE."

I

{¶ 23} In his first assignment of error, Hamilton argues the state failed to produce sufficient evidence to prove by clear and convincing evidence that he committed rape with a sexually violent predator specification, a felony of the first degree, two counts of gross sexual imposition, felonies of the third degree, and three counts of gross sexual imposition, felonies of the fourth degree. He additionally argues there was insufficient evidence to support a finding that he is a mentally ill person subject to court order. We disagree.

Applicable Law

{¶ 24} R.C. 2945.39(A)(2) and (B) provide:

> (2) On the motion of the prosecutor or on its own motion, the court may retain jurisdiction over the defendant if, at a hearing, the court finds both of the following by clear and convincing evidence:
>
> (a) The defendant committed the offense with which the defendant is charged.
>
> (b) The defendant is a mentally ill person subject to court order or a person with an intellectual disability subject to institutionalization by court order.
>
> (B) In making its determination under division (A)(2) of this section as to whether to retain jurisdiction over the defendant, the court may consider all relevant evidence, including, but not limited to, any relevant psychiatric, psychological, or medical testimony or reports,

the acts constituting the offense charged, and any history of the defendant that is relevant to the defendant's ability to conform to the law.

{¶ 25} The Supreme Court of Ohio has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty, as required beyond a reasonable doubt, as in criminal cases." *Cross v. Ledford*, 161 Ohio St. 469 (1954); *In re: Adoption of Holcomb*, 18 Ohio St.3d 361 (1985). In evaluating whether the trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *State v. Schiebel*, 55 Ohio St.3d 71, 74 (1990). If the trial court's judgment is "supported by some competent, credible evidence going to all the essential elements of the case," a reviewing court may not reverse that judgment. *Id.*

{¶ 26} While Hamilton mentions the gross sexual imposition charges in this assignment of error, only the rape charge was the subject of the hearing. "R.C. 2945.39, along with its related statutes, authorizes a common pleas court to exercise continuing jurisdiction over a criminal defendant who has been charged with a violent first- or second-degree felony and who has been found incompetent to stand trial and remains so after the expiration of R.C. 2945.38's one-year time frame for restoring competency." *State v.*

*Jackson*, 2021-Ohio-1884, ¶ 13 (8th Dist.) citing *State v. Williams*, 2010-Ohio-2453, ¶ 1; R.C. 2945.38 and 2945.39.

{¶ 27} Generally, "an appellate court will not disturb a trial court's finding a person is a mentally ill person subject to court order unless the court's decision is against the manifest weight of the evidence." *State v. Berihun*, 2024-Ohio-2054 (5th Dist.) ¶ 18 citing *State v. McNichols*, 2020-Ohio-2705 (4th Dist) ¶ 10; *In re Kister*, 2011-Ohio-2678 (4th Dist.) ¶ 21; *In re K.W.*, 2006-Ohio-4908 (10th Dist.) ¶ 6. When an appellate court reviews whether a trial court's decision is against the manifest weight of the evidence, the court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [fact-finder] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). A reviewing court may find a trial court's decision against the manifest weight of the evidence only in the " 'exceptional case in which the evidence weighs heavily against the [decision].' " *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1983).

## Rape Charge

{¶ 28} Hamilton was charged with rape pursuant to R.C. 2907.02(A)(2) which provides no person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force. Sexual conduct includes the insertion, however slight, of any body part into the vaginal opening of another. R.C. 2907.01(A).

{¶ 29} Force is defined as "any violence, compulsion or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). Force or threat of force can be inferred from the circumstances involving the sexual conduct.

{¶ 30} Hamilton, as L.M.'s stepfather was in a position of authority over L.M. from the time L.M. was seven-years-old. In *State v. Eskridge*, 38 Ohio St.3d 56 (1988), the Supreme Court of Ohio noted:

> Sexual activity between a parent and a minor child is not comparable to sexual activity between two adults with a history of consensual intercourse. The youth and vulnerability of children, coupled with the power inherent in a parent's position of authority creates a unique situation of dominance and control in which explicit threats and displays of force are not necessary to affect the abuser's purpose.

{¶ 31} *Eskridge* at 58-59.

{¶ 32} L.M. testified that Hamilton inserted his fingers into her vagina on at least five occasions and penetrated her vagina with his penis on one occasion when she was between 13 and 15 years old. L.M. further testified that the conduct was nonconsensual and that she was too scared to do anything about the conduct because she lived with Hamilton and coming forward would have destroyed the family unit. T. 15-16, 18. This testimony, standing alone, is sufficient to support a finding by clear and convincing evidence that Hamilton committed the crime of forcible rape.

{¶ 33} Hamilton challenges the credibility of L.M.'s disclosures based on 1.) inconsistencies between her 2010 diary entries and her 2020 written statement regarding whether or not there was penile penetration; 2.) the timing of her disclosure of the abuse shortly before her 16th birthday following an incident wherein an older adult male made advances towards her at a cookout; and 3.) a lack of corroborating evidence.

{¶ 34} First, the trial court could have discounted L.M.'s report of penile penetration and still found by clear and convincing evidence that Hamilton committed rape by digital penetration. L.M. provided clear testimony that digital penetration took place in her bedroom, on a four-wheeler, on his motorcycle and in his car. T. 16.

{¶ 35} Next, Hamilton speculates L.M. made up her allegations against Hamilton as a diversion for whatever occurred at the cookout. But Hamilton never cross examined L.M. regarding this triggering event in order to explore this theory. There was no information given during the hearing other than this man "cornered" L.M. in a shed where the refrigerator was located and this incident "just basically brought back all of the memories that I had of the abuse from [Hamilton]." T 20-21. The trial court therefore had only the information that this cookout event was the triggering event causing L.M. to come forward.

{¶ 36} Finally, "[c]orroboration of victim testimony in rape cases is not required." *State v. Triplett*, 2013-Ohio-3114, ¶ 43 (5th Dist.). The testimony of one witness, if believed by the factfinder, is enough to support a conviction. See, *State v. Dunn*, 2009-Ohio-1688, ¶ 133 (5th Dist.). Moreover, the trial court had additional information tending to support L.M.'s allegations. Hamilton never denied the allegations when confronted by his wife. Rather he only stated "we need to get her help." T. 65, 81. Then, when Arkansas

authorities arrived at Hamilton's home to interview him, a man fitting Hamilton's description answered the door but denied being Hamilton. T. 85.

{¶ 37} It is well established that the trial court is in the best position to determine the credibility of witnesses. *State v. DeHass*, 10 Ohio St .2d 230 (1967). After a review of the record, we conclude the trial court did not lose its way in finding by clear and convincing evidence that Hamilton committed the offense of rape and that the state produced sufficient evidence to support the trial court's finding.

Mentally Ill Person Subject to Court Order

{¶ 38} Hamilton next argues the trial court's determination that he is a mentally ill person subject to court order is unsupported by the record. We disagree.

{¶ 39} The phrase "mentally ill person subject to court order" is a statutorily defined term of art. A "mentally ill person subject to court order" includes a defendant who, due to his mental illness:

> . . .
>
> (2) Represents a substantial risk of physical harm to others as manifested by evidence of recent homicidal or other violent behavior, evidence of recent threats that place another in reasonable fear of violent behavior and serious physical harm, or other evidence of present dangerousness;
>
> . . .

{¶ 40} R.C. 5122.01(B).

{¶ 41} At the January 23, 2024 hearing, Hamilton and the state stipulated to the admissibility and authenticity of the reports of Dr. Adkins and Dr. O'Reilly. Dr. Adkins' report indicated Hamilton had been diagnosed with unspecified disruptive impulse control and conduct disorder. She stated Hamilton "presents with impaired attention and focus, depression, poor boundaries and communication deficits." Hamilton's treatment focused on boundary setting and communication. Dr. Adkins noted Hamilton had refused psychotropic medication. She concluded, however, that there was no evidence to suggest Hamilton was inappropriate for out-patient community care and monitoring through the Forensic Monitoring program.

{¶ 42} Dr. O'Reilly's report specifically concluded Hamilton is a mentally ill person subject to court order. The report additionally stated Hamilton had been diagnosed with major depressive disorder, recurrent with anxiety, and unspecified disruptive impulse control in his previously ordered competency evaluation. Dr. O'Reilly recommended Hamilton be required to attend psychoeducational groups and skill classes to improve his understanding and management of his treatment needs, depressive symptoms and anxiety, cognitive impairments, risk factors for violent and dangerous behavior, and to enhance his stability in the community. Dr. O'Reilly stated the least restrictive treatment alternative was conditional release consistent with these provisions. He further recommended that the trial court prohibit Hamilton from having unsupervised access to vulnerable populations including children, adolescents, and the elderly.

{¶ 43} These reports support a finding of "other evidence of present dangerousness." We therefore conclude trial court's finding that Hamilton is a mentally ill person subject to court order is supported by clear and convincing evidence.

{¶ 44} The first assignment of error is overruled.

II

{¶ 45} In his second assignment of error, Hamilton argues the trial court failed to make the necessary finding that he is a danger to himself or others pursuant to R.C. 2945.39(D) and further failed to include this finding in its judgment entry. We disagree.

{¶ 46} If, as here, a trial court finds pursuant to R.C. 2945.39(A)(2), that the defendant committed the crime charged and is a mentally ill person subject to court order, the court then commits the defendant to a hospital operated by the Department of Health or another appropriate facility. Hamilton does not point to any authority that requires the trial court to make a finding that the defendant is a danger to himself or others before doing so. Moreover, the relevant portion of R.C. 2945.39(D) states no such requirement:

> In determining the place of commitment, the court shall *consider* the extent to which the person is a danger to the person and to others, the need for security, and the type of crime involved and shall order the least restrictive alternative available that is consistent with public safety and the welfare of the of the defendant. In weighing these factors, the court shall give preference to protecting public safety.

{¶ 47} Emphasis added.

{¶ 48} There is therefore no requirement that the trial court specifically find the defendant is a danger to himself and others and to include that finding in its judgment entry. Rather, it is but one consideration in determining an appropriate placement for the

defendant. The trial court's February 8, 2024 judgment complies with the statue by indicating the least restrictive placement alternative consistent with public safety and Hamilton's welfare is a medium security forensic psychiatric facility.

{¶ 49} The second assignment of error is overruled.

III

{¶ 50} In his final assignment of error, Hamilton argues the trial court's finding that a medium security forensic psychiatric facility was the least restrictive alternative for placement is not supported by the record. We disagree.

{¶ 51} In support of his argument, Hamilton cites to the testimony of both Dr. Adkins and Dr. O'Reilly advocating placement in the community as the least restrictive placement. While this is accurate, Hamilton ignores the testimony regarding challenges in implementing the programing and monitoring recommended by the doctors in order for Hamilton to remain in the community. The testimony of Springvale Forensic Monitor Katie Wilson indicated the services recommended by Dr. O'Reilly were not available at Springvale. She further indicated it would be impossible to monitor Hamilton's contact with vulnerable community members. T(II). 32 - 34

{¶ 52} As noted above R.C. 2945.39(D)(1) provides that the court shall "give preference to protecting public safety." See also *State v. Williams*, 2010-Ohio-2453 ¶ 15. In the absence of availability of recommended outpatient safeguards, we find the trial court's decision to commit Hamilton to a medium security forensic psychiatric facility is sufficiently supported by the record.

{¶ 53} The final assignment of error is overruled.

{¶ 54} The judgment of the Tuscarawas County Court of Common Pleas is affirmed.


By King, J.,

Gwin, P.J. and

Wise, J. concur.